# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **Motedata Corporation,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Civil Action No. 2:25-cv-00518** |
| **v.** | § | |
| | § | |
| **Geoforce, Inc.,** | § | **Jury Trial Demanded** |
| | § | |
| *Defendant.* | § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Motedata Corporation files this Complaint for patent infringement against Geoforce, Inc. ("Geoforce," or "Defendant") alleging as follows:

## NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## THE PARTIES

2.      Plaintiff **Motedata Corporation ("Motedata" or "Plaintiff")** is a Delaware Corporation with a principal place of business at 43211 Lucketts Road, Leesburg, VA 20176.

3.      Upon information and belief, Defendant **Geoforce, Inc. ("Geoforce")** is a Texas corporation with an established place of business at 5830 Granite Pkwy #1200, Plano, TX 75024.

4.      On information and belief, Geoforce makes, uses, sells, and offers to sell fleet management systems and associated systems and devices to consumers throughout the State of Texas, including in this judicial District, and introduce such products and services into the stream of commerce knowing and intending that they would be extensively used in the State of Texas and this judicial District. On information and belief, Geoforce specifically targets customers in the

State of Texas and this judicial District, including through its website at https://www.geoforce.com, and through the Geoforce Connected Software platform, which utilizes vehicle telematics and tracking devices in combination with software applications/features for accessing, managing, and organizing data about the vehicles, referred to collectively herein as the "Accused Products."

## JURISDICTION AND VENUE

5.     This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq*. This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, *et seq*., 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338 (jurisdiction over patent actions).

6.     Geoforce is subject to personal jurisdiction in this Court. In particular, this Court has personal jurisdiction over Geoforce because Geoforce has engaged in continuous, systematic, and substantial activities within this State, including substantial marketing, offers to sell, and sales of products and services within this State and this District. Furthermore, upon information and belief, this Court has personal jurisdiction over Geoforce because Geoforce has committed acts giving rise to Plaintiff's claims for patent infringement within and directed to this District.

7.     Upon information and belief, Geoforce has committed acts of infringement in this District and has one or more regular and established places of business within this District under the language of 28 U.S.C. § 1400(b). Thus, venue is proper in this District under 28 U.S.C. § 1400(b).

8.     Geoforce maintains one or more regular and established places of business within the Eastern District of Texas.

9.     Defendant Geoforce, Inc. maintains an office at 5830 Granite Pkwy #1200, Plano, TX 75024. Plano is located within the Eastern District of Texas.

10.     Upon information and belief, Geoforce has conducted and does conduct substantial business in this forum, directly and/or through subsidiaries, agents, representatives, or intermediaries, such substantial business including but not limited to: (i) at least a portion of the infringements alleged herein; (ii) purposefully and voluntarily placing one or more infringing products into the stream of commerce with the expectation that they will be purchased and/or used by consumers in this forum; and/or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this judicial District.

11.     Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b).

## THE PATENTS-IN-SUIT

12.     This cause of action asserts infringement of United States Patent No. 8,314,705 ("the '705 Patent"), United States Patent No. 8,952,814 ("the '814 Patent"), and United States Patent No. 10,459,930 ("the '930 Patent") (collectively, the "Asserted Patents").

13.     The '705 Patent, entitled "Method and System for Storing, Retrieving, and Managing Data for Tags," duly and legally issued on November 20, 2012, from U.S. Patent Application No. 13/114,139, filed on May 24, 2011, naming Peter Lupoli, Jay P. Kesan, and Peter Cappello as co-inventors. The '705 Patent is a continuation-in-part of U.S. Patent Application No. 10/952,789, filed on September 30, 2004, and issued as United States Patent No. 7,388,488 ("the '488 Patent") on June 17, 2008. A true and correct copy of the '705 Patent is attached hereto as **Exhibit 1** and is incorporated by reference.

14.     The '705 Patent claims patent-eligible subject matter under 35 U.S.C. § 101. *See infra*, ¶¶ 32–44.

15.    Motedata is the owner and assignee of all rights, title, and interest in and under the '705 Patent.

16.    The '814 Patent, entitled "Method and System for Storing, Retrieving, and Managing Data for Tags," duly and legally issued on February 10, 2015, from U.S. Patent Application No. 13/668,571, filed on November 5, 2012, naming Peter Lupoli, Jay P. Kesan, and Peter R. Cappello as co-inventors. The '814 Patent is a continuation of the '705 Patent. The '814 Patent is subject to a patent term extension under 35 U.S.C. § 154(b) of 138 days. A true and correct copy of the '814 Patent is attached hereto as **Exhibit 2** and is incorporated by reference.

17.    The '814 Patent claims patent-eligible subject matter under 35 U.S.C. § 101. *See infra*, ¶¶ 32–44.

18.    Motedata is the owner and assignee of all rights, title, and interest in and under the '814 Patent.

19.    Motedata has standing to sue for infringement of the '814 Patent.

20.    The '930 Patent, entitled "Method and System for Storing, Retrieving, and Managing Data for Tags," duly and legally issued on October 29, 2019, from U.S. Patent Application No. 15/811,926, filed on November 14, 2017, naming Peter Lupoli, Jay Kesan, and Peter R. Cappello as co-inventors. The '930 Patent is a continuation of the '870 Patent. The '930 Patent is subject to a terminal disclaimer. A true and correct copy of the '930 Patent is attached hereto as **Exhibit 3** and is incorporated by reference.

21.    The '930 Patent claims patent-eligible subject matter under 35 U.S.C. § 101. *See infra*, ¶¶ 32–44.

22.    Motedata is the owner and assignee of all rights, title, and interest in and under the '930 Patent.

23.     Motedata has standing to sue for infringement of the '930 Patent.

24.     The Patents-in-Suit generally relate to the use of tags and the association of said tags with individuals or entities to track and manage the individuals or entities.

25.     Around the fall of 2002 and early 2003, Mr. Lupoli and Dr. Kesan, who are long-time friends, began discussing technologies that might be used to track objects by using tags, such as radio frequency identification ("RFID") tags.

26.     Around May 2003, Mr. Lupoli and Dr. Kesan happened to be in Italy at the same time on different matters. Mr. Lupoli was on vacation in Tuscany, and Dr. Kesan (a long-time, distinguished professor of patent law and inventor on several other patents) was there to lecture at a conference in Pisa, Italy. The two friends spent most of their time in Italy working on their idea. Surrounded by the history and architecture of Italy, they recognized a need to track and manage valuable objects such as priceless paintings, rare wine bottles, expensive inventory, vehicles in a fleet, and even more valuable things like soldiers in the military or family members. They discussed their interests and explored potential solutions for tracking objects using hardware and software.

27.     After returning to the United States, Mr. Lupoli and Dr. Kesan continued discussing the capabilities and functionalities of their tracking system, brainstorming additional features and components, and considering ideas that others might find useful in various industries and potential uses.

28.     In the fall of 2003, Mr. Lupoli and Dr. Kesan formed a company, called "Motedata" (as in "motes" (or specks) of data), to focus their development efforts and to be the owner of their intellectual property. They hired outside patent prosecution counsel and shared their work with them. These efforts led to the filing of the '449 Provisional Application in October of 2003.

29.     Around early 2005, Mr. Lupoli and Dr. Kesan began working with Peter Cappello, who was a Professor of Computer Science at the University of California, Santa Barbara. Mr. Cappello worked with Mr. Lupoli and Dr. Kesan to conceive of and refine certain aspects of their inventions, including the idea of using searches with ranked results to mine tag data. The three inventors continued to expand and refine their thoughts and ideas and developed more detailed solutions. Motedata filed a continuation-in-part (the '742 Patent) naming all three gentlemen as inventors and a series of continuations based on the work of all three inventors.

30.     Motedata has filed and obtained more than 30 U.S. and foreign patents on various aspects of their invention—some of which (including the Asserted Patents) involve contributions by all three inventors and some include only contributions by Mr. Lupoli and Dr. Kesan.

31.     The Asserted Patents describe and claim the core components of the fleet management systems that many companies—including Geoforce—use to monitor and track valuable assets such as vehicles.

32.     The Asserted Patents describe and claim eligible subject matter under 35 U.S.C. § 101. They describe and claim specialized hardware, such as tags that are associated with objects or entities and used to collect data for management and tracking purposes.

33.     Attached as **Exhibit 4** and incorporated by reference is the Declaration of Gregory J. Gonsalves, Ph.D., J.D., regarding Patentable Subject Matter under 35 U.S.C. § 101 in Support of Complaint by Motedata, Inc. ("Gonsalves Decl.").

34.     The claims of the Asserted Patents are not directed to an abstract idea. *See* Gonsalves Decl., ¶¶ 159–60, 173–74, 188–89, 204–05, 218–19, 233–34, 248–49.

35.     As explained by Dr. Gonsalves, the claimed systems and methods represent "concrete solution[s] for resolving particular problems that first arose with the development of

networks hosting wireless devices." Gonsalves Decl., ¶¶ 151, 166, 181, 196, 211, 226, 241. These include: "how to retrieve and organize data associated with one or more wireless tags having sensors, to generate alerts based on the retrieved data, and to generate queries on the data" (*id.*, ¶ 151), "how to retrieve and organize static, dynamic, and temporal data associated with one or more tags having tag identifiers from a plurality of repositories and to query the data" (*id.*, ¶ 166), "how to retrieve and organize data including location data associated with one or more tags having tag identifiers from a plurality of repositories and to query the data" (*id.*, ¶ 181), "how to retrieve and organize data associated with one or more tags having tag identifiers from a plurality of repositories and to query the data (*id.*, ¶¶ 196, 211, 226, 241).

36.    The claimed systems and methods do not threaten to inhibit innovation. Instead, they address problems that only arose with the advent of wireless devices and communication networks. Gonsalves Decl., ¶¶ 153, 168, 183, 198, 213, 228, 243. The patented inventions do not apply to communication generally, but only to the particular problems of how to retrieve and organize specific types of data, generate alerts, organize the data, and respond to queries, for example. *See id.* According to Dr. Gonsalves, there was never a need to address the problems of retrieving and organizing data and performing the additional claimed processing tasks associated with that data before the proliferation of mobile wireless devices and associated networks. *Id.*

37.    The patented solution is concrete, not abstract. According to Dr. Gonsalves, there are numerous other ways to retrieve, organize, and query data, as described in the claims of the Asserted Patents. "For example, a server could receive a data from a wireless device and simply perform a conventional search. The patent[s] do[] not claim those types of systems or any of the myriad of other communication systems." Gonsalves Decl., ¶¶ 154, 169, 184, 199, 214, 229, 244.

38.     The claimed systems and methods "contain[] many limitations that are not present in a simplistic example of mere communication with a wireless device," including, *inter alia*, tags, tag identifiers, control software, sensors, wireless transceivers, memory, a central authority, and a web interface. Gonsalves Decl., ¶¶ 155, 170, 185, 200, 215, 230, 245.

39.     The claims describe "particular operations to be performed by the system and address[] problems that arise in the realm of computer systems." Gonsalves Decl., ¶¶ 156, 171, 186, 201, 216, 231, 246.

40.     Because the claimed solutions are concrete, not abstract, they do not "threaten to 't[ie] up' a 'building block[] of human ingenuity,' which is the 'concern that drives' the judicial carve-out of 'abstract ideas' from § 101." Gonsalves Decl., ¶¶ 157, 172, 187, 202, 217, 232, 247.

41.     Moreover, even if the claims of the Asserted Patents were determined to be drawn to an abstract idea, they are still patent-eligible because they include an "inventive concept" at least because they are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." Gonsalves Decl., ¶¶ 160, 175, 190, 205, 220, 235, 250 (citing *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)); *see also* Gonsalves Decl., ¶¶ 164–65, 179–80, 194–95, 209–10, 224–25, 239–40, 254–55.

42.     The claims of the Asserted Patents do not simply recite applying a known business process to a technological environment. Instead, they "address[] problems specific to the new technology of wireless devices" and the problems of how to retrieve and organize certain types of data associated with wireless tags/entities, and to perform additional processing tasks, such as generating alerts based on the retrieved data, organizing the data, ranking data, and querying the data. Gonsalves Decl., ¶¶ 161, 176, 191, 206, 221, 236, 251.

43.     The claims override a routine sequence of events in that they provide a novel system to retrieve and organize data and to perform the additional claimed processing tasks. *See* Gonsalves Decl., ¶¶ 162, 177, 192, 207, 222, 237, 252.

44.     The claims of the Asserted Patents are directed to the inventive combination of computers, processors, data repositories, and tags to track and monitor attributes of individual entities associated with the tags and providing tangible and usable outputs.

45.     The claims of the Asserted Patents improve the functioning of traditional driver monitoring systems. For example, and without limitation, the use of tags, the ability to associate them with objects or entities, and the determination of static, dynamic, and temporal information associated with the objects via the tags, is an improvement over the prior art that was not well-understood, routine, or conventional at the time. The use of intelligent tags to capture data that is then used in a variety of internal functions improves the overall performance and efficiency of the fleet or asset tracking and management system.

46.     Defendant has not obtained a license to any of the Asserted Patents.

47.     Defendant does not have Motedata's permission to make, use, sell, offer to sell, or import products covered by one or more claims of the Asserted Patents or to perform any methods claimed in the Asserted Patents.

48.     Defendant needs to obtain a license to the Asserted Patents and cease its ongoing infringement of Motedata's patent rights.

## GENERAL ALLEGATIONS

### Geoforce Connected Software Platform

49.     Upon information and belief, Geoforce makes, uses, sells, offers to sell, and/or imports into the United States methods and systems for storing, retrieving, and managing data for

tags as claimed in each of the Asserted Patents. For example, and without limitation, Geoforce provides its customers with the Geoforce Connected Software platform ("GCS platform").

50.     According to Geoforce, Connected Software platform provides GPS tracking of equipment, including location history, geofence alerts, utilization insights, and fleet age.



**TRACK EQUIPMENT**

# LOCATE VALUABLE EQUIPMENT AND STREAMLINE OPERATIONS

Get more than dots on a map. Gain full asset visibility with location history, geofence alerts, and utilization insights, plus industry-specific map overlays for rail stops, well sites, drilling platforms, and more. Our rugged GPS tracking is built to handle the toughest field environments.

https://www.geoforce.com/connected-software/

51.     The GCS platform works with cellular and satellite trackers, on powered and non-powered equipment and vehicles. A variety of fleet assets can be tracked, using a variety of tracking devices, each of which serves as a "tag" that includes "tag-related data."



https://www.geoforce.com/advanced-vehicle-tracking/



https://www.geoforce.com/asset-utilization/

52.     The GCS platform is accessible via a desktop computer or a mobile app on both iOS and Android mobile devices.



https://www.geoforce.com/app/



https://www.geoforce.com/white-labeled-oem/

53.     Geoforce provides a variety of devices for monitoring fleet assets, including cellular and satellite trackers, awe well as trackers for use on powered or non-powered equipment :



https://www.geoforce.com/product-category/cellular-gps-trackers/

54.     Upon information and belief, GCS platform allows system users to access and organize tag-related data:

**ADVANCED EQUIPMENT AND VEHICLE TRACKING FEATURES**

- Equipment Utilization Insights: Optimize asset allocation, fleet size, and deployment strategies to maximize ROI.

- Embedded Power BI Dashboards: Leverage interactive dashboards to analyze KPI metrics and other critical data.

- Geofence Management: Easily set geofences with automatic alerts for security and compliance.

- Alerts: Configure custom rules to monitor key events and receive real-time notifications to address issues promptly.

- Maintenance & Inspections: Reduce downtime and prolong asset lifespan with proactive service planning. Streamline compliance, reduce paperwork, and maintain comprehensive inspection records.

https://www.geoforce.com/advanced-vehicle-tracking/

https://www.youtube.com/watch?v=YZVHny2sV-o

55.     The GCS platform "combin[es] a cloud-based software platform with rugged GPS tracking devices and global satellite and cellular networks…"



Combining a cloud-based software platform with rugged GPS tracking devices and global satellite and cellular networks, Geoforce's solutions include efficient asset location and retrieval, rental invoice auditing, service delivery verification, inspection compliance, equipment maintenance alerts, and a host of others.

https://www.geoforce.com/company/

56.     According to Geoforce, the GCS platform allows users to view historical data associated with fleet assets that have tags installed or associated with them:



https://www.youtube.com/watch?v=YZVHny2sV-o

[Audio voiceover: "Finally, each of the map pins are clickable to reveal some detail about that asset: the asset name and its ID, its last known location, when it was last seen by our system, and if its a vehicle tag—its status—either stopped or in motion."]



https://www.youtube.com/watch?v=YZVHny2sV-o

[Audio voiceover: "You can select a specific date range to see where your asset was at that time."]

57.     Each tag in the GCS platform is represented within the user interface by at least a serial number, shown in the image below under the "GPS Tag" dropdown menu, which distinguishes that particular tag from all other tags in the system:



https://www.youtube.com/watch?v=YZVHny2sV-o

[Audio voiceover: "Select the serial number of the Geoforce tag that you have installed on your asset.  Finally, select an asset type."]

58.     The GCS platform provides tagged assets with an Asset Name, Asset ID, GPS Tag ID, as well as having data fields for type, make, model and serial number":



https://www.youtube.com/watch?v=YZVHny2sV-o

59.     According to Geoforce, the GCS platform allows users to "Locate valuable equipment and streamline operations, move equipment faster, maximize ROI, drive more uptime with smarter maintenance, and confirm service delivery and ensure accurate billing." *See* https://www.geoforce.com/connected-software.

60.     The GCS platform provides customers with each of the benefits identified above.

### Summary of Infringement Allegations

61.     Geoforce has infringed and continues to infringe (literally and/or under the doctrine of equivalents), directly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Asserted Patents by making, using, testing, supplying, causing to be supplied, selling, and/or offering for sale in the United States the GCS platform, alone or in conjunction with other Geoforce products, such as the GPS Asset Tracking Devices used with the GCS platform (*see* https://www.geoforce.com/hardware).

62.     Motedata has been and continues to be damaged because of Geoforce's infringing conduct. Geoforce is therefore liable to Motedata in an amount that adequately compensates

Motedata for Geoforce's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

63.     Additionally, upon information and belief, Geoforce markets, sells, and/or uses other products and services that are not covered by the claims of the Asserted Patents but that are used or offered with the GCS platform and/or that benefit Geoforce in ways at least attributable in part to the GCS platform. Accordingly, Motedata is entitled to collect damages from Geoforce for convoyed sales of certain non-patented products and services.

64.     Geoforce failed to obtain permission from Motedata to make, use, sell, offer to sell, and/or import products or services incorporating the inventions claimed in the Asserted Patents.

65.     For each count of infringement listed below, Motedata incorporates and re-states the allegations contained in the preceding paragraphs above, including these General Allegations, as if fully set forth in each count of infringement.

## COUNT I – INFRINGEMENT OF THE '705 PATENT

66.     Motedata incorporates by reference the allegations made in paragraphs 1–65.

67.     Defendants have been and are now directly infringing the '705 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products or systems that are covered by and/or that practice the methods described in one or more claims of the '705 Patent, including but not limited to Claim 15.

68.     For example, the GCS platform is a system for retrieving and organizing data that is associated with one or more tags having one or more identifiers from a plurality of repositories. The GCS platform is implemented by at least one computer including one or more processors, comprising the elements described in at least Claim 15.

69.     Additionally, Geoforce is indirectly infringing the '705 Patent in violation of 35 U.S.C. § 271(b) by actively inducing its customers to use products or systems that are covered by

and/or that practice the methods described in one or more claims of the '705 Patent, including but not limited to Claim 15. Geoforce's customers' use of the GCS platform constitutes direct infringement of the '705 Patent. Geoforce has had knowledge of the '705 Patent at least since the filing of this lawsuit, and its ongoing inducement of its customers' use of the GCS platform in light of the infringement allegations made herein and in the attached claim charts is therefore with knowledge of the '705 Patent and with the specific intent to induce ongoing infringement of its claims.

70.    An exemplary claim chart comparing Geoforce's infringing GCS platform systems/methods to one or more claims of the '705 Patent is attached as **Exhibit 5** and is incorporated by reference as if fully set forth herein.

71.    As a result of Geoforce's infringement of the '705 Patent, Motedata has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## <u>COUNT II – INFRINGEMENT OF THE '814 PATENT</u>

72.    Motedata incorporates by reference the allegations made in paragraphs 1–65.

73.    Geoforce has been and is now directly infringing the '814 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products or systems that are covered by and/or that practice the methods described in one or more claims of the '814 Patent, including but not limited to Claim 13.

74.    For example, the GCS platform is a system for retrieving and organizing data that is associated with one or more tags having one or more identifiers from a plurality of repositories. The GCS platform is implemented by at least one computer including one or more processors, comprising the elements described in at least Claim 13.

75.    Additionally, Geoforce is indirectly infringing the '814 Patent in violation of 35 U.S.C. § 271(b) by actively inducing its customers to use products or systems that are covered by and/or that practice the methods described in one or more claims of the '814 Patent, including but not limited to Claim 16. Geoforce's customers' use of the GCS platform constitutes direct infringement of the '814 Patent. Geoforce has had knowledge of the '814 Patent at least since the filing of this lawsuit, and its ongoing inducement of its customers' use of the GCS platform in light of the infringement allegations made herein and in the attached claim charts is therefore with knowledge of the '814 Patent and with the specific intent to induce ongoing infringement of its claims.

76.    An exemplary claim chart comparing Geoforce's infringing GCS platform systems/methods to one or more claims of the '814 Patent is attached as **Exhibit 6** and is incorporated by reference as if fully set forth herein.

77.    As a result of Geoforce's infringement of the '814 Patent, Motedata has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## COUNT III – INFRINGEMENT OF THE '930 PATENT

78.    Motedata incorporates by reference the allegations made in paragraphs 1–65.

79.    Geoforce has been and is now directly infringing the '930 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States products or systems that are covered by and/or that practice the methods described in one or more claims of the '930 Patent, including but not limited to Claim 16.

80.    For example, the GCS platform is a system for retrieving and organizing data that is associated with one or more tags having one or more identifiers from a plurality of repositories.

The GCS platform is implemented by at least one computer including one or more processors, comprising the elements described in at least Claim 16.

81.     Additionally, Geoforce is indirectly infringing the '930 Patent in violation of 35 U.S.C. § 271(b) by actively inducing its customers to use products or systems that are covered by and/or that practice the methods described in one or more claims of the '930 Patent, including but not limited to Claim 16. Geoforce's customers' use of the GCS platform constitutes direct infringement of the '930 Patent. Geoforce has had knowledge of the '930 Patent at least since the filing of this lawsuit, and its ongoing inducement of its customers' use of the GCS platform in light of the infringement allegations made herein and in the attached claim charts is therefore with knowledge of the '930 Patent and with the specific intent to induce ongoing infringement of its claims.

82.     An exemplary claim chart comparing Geoforce's infringing GCS platform systems/methods to one or more claims of the '930 Patent is attached as **Exhibit 7** and is incorporated by reference as if fully set forth herein.

83.     As a result of Geoforce's infringement of the '930 Patent, Motedata has suffered and is owed monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

## DEMAND FOR A JURY TRIAL

84.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Motedata demands a trial by jury on all issues triable of right by a jury.

## PRAYER FOR RELIEF

85.     WHEREFORE, Motedata respectfully requests that this Court enter judgment in its favor and grant the following relief:

a.      A judgment that Geoforce has directly infringed one or more claims of each of the Asserted Patents;

b.      A judgment that Geoforce has indirectly infringed one or more claims of each of the Asserted Patents;

c.      A judgment and order requiring Geoforce to pay Motedata past and future damages under 35 U.S.C. § 284, including for supplemental damages arising from any continuing post-verdict infringement for the time between trial and entry of the final judgment with an accounting, as needed, as provided by 35 U.S.C. § 284;

d.      A judgment and order requiring Geoforce to pay Motedata reasonable ongoing royalties on a going-forward basis after final judgment;

e.      A judgment and order requiring Geoforce to pay Motedata pre-judgment and post-judgment interest on the damages award;

f.      A judgment and order requiring Geoforce to pay Motedata's costs; and

g.      Such other and further relief as the Court may deem just and proper.


Dated: May 9, 2025                          Respectfully submitted,


                                             /s/ Shawn A. Latchford
                                             **SHAWN A. LATCHFORD**
                                             State Bar No. 24066603
                                             *Lead Attorney*
                                             **ANDREW J. WRIGHT**
                                             State Bar No. 24063927
                                             **EDWARD K. CHIN**
                                             State Bar No. 50511688
                                             **NICHOLAS A. WYSS**
                                             State Bar No. 24071459
                                             **BRUSTER PLLC**
                                             680 North Carroll Avenue, Suite 110
                                             Southlake, Texas 76092

817.601.9564 (telephone)
shawn@brusterpllc.com
andrew@brusterpllc.com
ed@brusterpllc.com
nwyss@brusterpllc.com

**COUNSEL FOR PLAINTIFF
MOTEDATA INC.**